IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT K. DECKER, #51719-074, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | )  Case No. 24-cv-01139-JPG |
| FEDERAL BUREAU OF PRISONS, | ) |
| OCTAVIA WYATT, | ) |
| COLLETTE PETERS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court for preliminary review of the Complaint filed by Plaintiff Robert K. Decker. (Doc. 1). Plaintiff is an inmate in the custody of the Federal Bureau of Prisons and is currently housed at the United States Penitentiary located in Marion, Illinois (USP-Marion). He filed the Complaint under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-2680.

This matter is subject to review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### Complaint

The Complaint sets forth the following allegations (Doc. 1): Plaintiff alleges that Defendant Octavia Wyatt (who he describes as a counterterrorism analyst for the BOP) violated his rights

1

multiple times beginning in February of 2021 when she interfered with his ability to correspond with his wife. It can be inferred from Plaintiff's allegations and his passing mention in the complaint that Plaintiff resides in the Communications Management Unit (CMU) at USP-Marion. The Court knows this to be a housing arrangement that comes with enhanced monitoring of incoming and outgoing communications. In the Complaint, Plaintiff alleges that on six discrete occasions Wyatt has abused her authority or violated BOP procedures by removing approved contacts from his access, by preparing inaccurate or improper incident reports related to some of his outgoing correspondence, or by otherwise interfering with his ability to communicate.

First, Plaintiff alleges that in February of 2021, Wyatt abused her position and the disciplinary process when she wrote Plaintiff an infraction for abusing the mail by allegedly sending his wife instructions about how to conduct business on the "dark web" to obtain drugs. (Doc. 1 at 2). Plaintiff alleges this was an abuse of process and retaliation by Wyatt for other administrative remedies that Plaintiff had filed against her.

Second, on November 16, 2021, Plaintiff alleges that he attempted to add his wife's email address to his approved communication list, an effort he had tried multiple times in the past, and a form of contact many other CMU inmates are afforded. He claims Wyatt abused process, conspired with other employees, and attempted to extend his placement in the CMU with an incident report about this issue.

Third, he alleges that on February 13, 2023, Wyatt wrote Plaintiff an incident report for abuse of process of the mail because he attempted to send a letter to his daughter, in which he asked her to relay well-wishes to his younger son. He alleges this incident report was also an abuse of process and part of a conspiracy to keep him in the CMU.

Fourth, Plaintiff alleges that in August of 2023, he wrote a letter to his wife's family court attorney wherein he asked the attorney to relay a message to his wife and her sister. He claims the mail should not have been reviewed because it was marked as "legal," but nevertheless Wyatt had it scanned into his file, and he was charged with abuse of mail.

Fifth, he alleges that in February of 2021, Wyatt improperly removed his wife from his contact list, which caused adverse effects for his wife and his relationship. He additionally claims that on October 7, 2022, his son's foster mother was also removed from his approved communication list. He claims both removals were done by Wyatt without following proper policies or procedures of the BOP, and that Wyatt lacked the authority to alter his contacts.

Sixth, and finally, Plaintiff alleges that because he was unable to contact his wife, the two could not coordinate a strategy to defend their rights in family court, which led to the loss of custody of their son. He claims this violated his rights and his wife's rights, and thus he also alleges a loss of consortium. He claims the communication interference has caused extreme emotional distress.

Plaintiff seeks $200,000 for the intentional infliction of emotional distress for he and his wife. (Doc. 1 at 5).

Based on the allegations, the Court finds it convenient to designate the following counts in the *pro se* Complaint:

> **Count 1:** FTCA claim against the United States for Wyatt's alleged abuse of process in the six enumerated incidents;
>
> **Count 2:** FTCA claim against the United States for Wyatt's conspiracy to keep Plaintiff in the CMU;
>
> **Count 3:** FTCA claim against the United States for Wyatt's retaliatory behavior towards Plaintiff;

   **Count 4:**  FTCA claim against the United States for intentional infliction of emotional distress related to Wyatt's behaviors.

(Doc. 1). The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by the Court. **Any other claim that is mentioned in the Complaint but not addressed here is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).**

## Discussion

  The FTCA permits a suit for money damages against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). The FTCA's jurisdictional grant only covers "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Augustis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (citing *Morisch v. United States*, 653 F.3d 522, 530 (7th Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances.")). The United States' waiver of sovereign immunity is not absolute. Section 2680 sets forth claims for which it reserves immunity. Subsection (h) reserves immunity for claims "arising out of" certain intentional torts: "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." 28 U.S.C. § 2680(h).

  The proper defendant for an FTCA claim is the United States, so the Court begins by keeping the United States as the sole remaining defendant, and by dismissing the Federal Bureau

of Prisons, Octavia Wyatt, and Colette Peters (the director of the BOP).  *Jackson v. Koetter*, 541 F.3d 688, 693 (7th Cir. 2008).

Next, the Court must consider if Plaintiff's allegations satisfy the basic components of each of the claims he has identified.  When analyzing an FTCA claim, the Court looks to the law of the state where the misconduct occurred.  *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013). Beginning with his allegation that Wyatt's actions constituted an abuse of process, under Illinois law, a plaintiff pleading abuse of process must establish an ulterior purpose or motive for the use of regular court process, and an act used in the process not proper in the regular prosecution of a suit.  *See e.g., Evans v. West*, 935 F.2d 922, 923 (7th Cir. 1991).  Here, Plaintiff alleges that Wyatt's actions may have been improper within the BOP operating procedures or policies, but he does not allege that Wyatt's actions had anything to do with court proceedings or a prosecution. Additionally, abuse of process is an intentional tort expressly listed in § 2680(h) for which the government reserves immunity.  As such, his allegations are insufficient to maintain an abuse of process claim under Illinois law and Count 1 is dismissed with prejudice.

In addition to abuse of process, Plaintiff alleges that Wyatt conspired with others to keep him in the CMU. Under Illinois law, a plaintiff must demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (*citing McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).  Plaintiff alleges that Wyatt conspired with other BOP and CTU (counterterrorism unit) employees to keep Plaintiff in the CMU, and that in furtherance of this conspiracy she issued him improper disciplinary reports related to his correspondence and

approved contacts. These allegations are sufficient at this preliminary juncture to proceed on a conspiracy claim under the FTCA.

To the extent that Plaintiff discusses retaliation, there is no apparent common law tort theory that correlates with Plaintiff's factual allegations. At most, he might be hinting at a First Amendment theory of retaliation, but such a claim would necessarily fail because the Supreme Court held in *Egbert v. Boule*, 596 U.S. 482, 498-99 (2022) that there is no *Bivens* action for First Amendment retaliation. Therefore, Claim 3 is dismissed without prejudice as insufficiently pled.

Finally, Plaintiff alleges in the closing section of his complaint that he wishes to seek damages for the intentional infliction of emotional distress. Although it sounds by name like an action that might be barred by the intentional tort exception of § 2680(h), intentional infliction of emotional distress is not a tort enumerated in subsection (h), and many Federal Courts of Appeals agree that such claims are not barred. *See, e.g., Santiago-Ramirez v. Secretary of the Department of Defense*, 984 F.2d 16, 20 (1st Cir. 1993) (holding that, "Claims against the government for intentional infliction of emotional distress are not excepted from the FTCA."); *Truman v. United States*, 26 F.3d 592, 597 (5th Cir. 1994) (same); *Gross v. United States*, 676 F.2d 295, 303 (8th Cir. 1982) (same); *Sheehan v. United States*, 896 F.2d 1168, 1171–72 (9th Cir. 1990) (same); *see also Kohn v. United States*, 680 F.2d 922, 926 (2d Cir. 1982) (reversing the dismissal of an intentional infliction of emotional distress claim under the FTCA); *Ferguson v. United States Army*, 938 F.2d 55, 56 (6th Cir. 1991) (same); *Andrews v. United States*, 732 F.2d 366, 371 (4th Cir. 1984) (affirming damages award under the FTCA for intentional infliction of emotional distress); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 855 (10th Cir. 2005) (vacating FTCA judgment for the plaintiffs on an intentional infliction of emotional distress claim

and remanding for findings on whether the plaintiffs suffered severe emotional distress under state law).

To successfully assert a claim for intentional infliction of emotional distress ("IIED"), requires the clearing of "the high bar set by Illinois case law for that type of claim." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). In 1961, the Illinois Supreme Court recognized the intentional causing of severe emotional distress as a separate and additional tort. *Knierem v. Izzo*, 174 N.E.2d 157 (Ill., 1961). Approximately fifteen years later, relying upon Restatement (Second) of Torts § 46 (1965), the Court outlined the requirements for the tort. *See Public Finance Corp. v. Davis*, 360 N.E.2d 765 (Ill., 1976). "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill., 1988) (*citing* Public Finance, 360 N.E.2d at 767).

The conduct involved must be "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21, 607 N.E.2d 201, 211 (1992)). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity." *McGrath*, 533 N.E.2d at 809 (citing Restatement (Second) of Torts § 46, comment j, at 77–78 (1965)).

Here, it cannot be determined from the face of the pleadings if the conduct identified was truly extreme and outrageous. However, Plaintiff suggests that he was singled out for the treatment he describes by Wyatt, and Wyatt's conduct caused him to lack communications with his family,

which ultimately impacted his ability to successfully pursue custody of one of his children. At this early juncture, the Court will read the complaint broadly in Plaintiff's favor and it will infer his allegations are sufficient for now to sustain an intentional infliction of emotional distress claim.[1]

Having determined that Plaintiff may proceed on Count 2 for conspiracy and Count 4 for the intentional infliction of emotional distress, the Court also briefly considers the FTCA's statute of limitations and exhaustion requirements. Pursuant to the provisions of the FTCA, the administrative process must be fully exhausted before claims may be brought in federal court. 28 U.S.C. § 2675(a). Administrative exhaustion under the FTCA requires an inmate to submit written notification of the incident, accompanied by a sum certain claim for monetary damages, to the federal agency responsible for the activities giving rise to the claim. See 28 C.F.R. §§ 14.2(a) and (b). The inmate may file an FTCA suit in federal court only after the agency denies the inmate's claim and must do so within six months of the mailing of the denial. 28 C.F.R. § 14.9. An administrative tort claim is statutorily presumed denied if six months pass without action on a properly filed administrative claim. 28 C.F.R. § 2675(a).

Here, Plaintiff has filed a Motion to Stay[2] to allow for proper exhaustion. This strategy is curious, but upon a closer review of Plaintiff's allegations and attempts at administrative exhaustion, his strategy makes perfect sense. Plaintiff initially began his quest for administrative exhaustion with the filing of a March 20, 2023, Form 95. He has not received a formal response. After six months, he could have perhaps decided that the non-response to his administrative remedy could be treated as "presumed denied" by § 2675(a), and he would then have six months

---

[1] To the extent that Plaintiff also intends to pursue damages on behalf of his wife, he cannot do so because pro se litigants cannot represent one another. *Davis v. Anderson*, 718 Fed. App'x 420, 423 (7th Cir. 2017) (a pro se litigant, even one who is a licensed attorney, cannot represent other people in district court or on appeal).

[2] The original Motion to Stay (Doc. 2) was received at the time the case was filed. Plaintiff transmitted a duplicate Motion (Doc. 8) on May 31, 2024, which is identical to the original.

from that time to initiate litigation. These calculations would place him with a filing date of March 20, 2024, and indeed, he signed and dated his complaint and motion to stay on March 18, 2024. However, Plaintiff also received written correspondence about his administrative remedy on March 7, 2024, informing him that his remedy was still under review and a response was "pending." (Doc. 1 at 16). In light of this letter, Plaintiff is still hopeful he will get an actual response, but he is hedging his bets by also trying to file this suit within six months of the 'presumed' denial date afforded by § 2675(a). Given this series of events, the Court will defer ruling on the Motions to Stay (Docs. 2, 8) and will require the United States to respond to the Motion.

One final topic is worth mention. Both the FTCA (28 U.S.C. § 1346(b)(2)) and the Prison Litigation Reform Act (42 U.S.C. § 1997(e)(e)) preclude suits by prisoners for "mental or emotional injuries suffered while in custody without a prior showing of physical injury." *See e.g., Hacker v. Dart*, 62 F.4th 1073, 1086-87 (7th Cir. 2023) (finding that an inmate could not recover compensatory damages for mental or emotional injury related to the denial of access to a teletype phone because the PLRA does not allow purely compensatory damages for mental or emotional harm); *West v. United States*, 729 Fed. App'x 145 (3d Cir. 2018) (finding that a federal inmate's FTCA claim seeking compensation for purely mental and emotional injuries was subject to dismissal per §§ 1346(b)(2) and 1997(e)(2)); *Maxten v. United States*, 2018 WL 3148238 at *2 (N.D. W.V. Feb. 26, 2018) (dismissing an FTCA claim premised on mental and emotional injury because of §§ 1346(b)(2) and 1997(e)(e)); *Damon v. United States*, 2017 WL 912113 at *2 (S.D. W.V. Mar. 7, 2017) (dismissing an inmate's FTCA claim absent a showing of physical injury); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (noting that the majority of federal circuits to discuss § 1997(e)(e) had concluded that compensatory damages were not recoverable for mental

9

or emotional injuries without physical injury). Here, Plaintiff seeks monetary compensation for purely mental and emotional injuries, so ultimately, he may have problems with the limits on recovery in the FTCA and PLRA. Despite this potential issue, the Seventh Circuit has advised that the pleading stage is not the appropriate time to dispose of a case on this basis, *Calhoun v. DeTella*, 319 F.3d 936, 940-41 (7th Cir. 2003), so Counts 2 and 4 shall proceed as pled.

### Disposition

**IT IS ORDERED** that the Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A. **COUNTS 2 and 4** will receive further review against Defendant **UNITED STATES**. A ruling on Plaintiff's Motion to Stay (Docs. 2, 8) will be **DEFERRED**, and the **UNITED STATES shall respond to these Motions within 21 days** of entering an appearance in this case.

**IT IS ORDERED** that as for **COUNTS 2 and 4**, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons for service of process on Defendant **UNITED STATES OF AMERICA**. The Clerk shall issue the completed summons. Pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint (Doc. 1), the Motions (Docs. 2, 8) and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint (Doc. 1), the Motions (Docs. 2, 8) and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon the United States Attorney for the Southern District of Illinois a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to the United States

Attorney.  Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS ORDERED** that, if the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint (Doc. 23) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED**.

**DATED: 6/13/2024**

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendant will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendant's Answer, but it is entirely possible that it will take **90 days** or more. When the defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**