IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT K. DECKER, #51719-074, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 24-cv-1139-JPG |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is before the Court on the Government's Motion to Dismiss (Doc. 21) Plaintiff Robert K. Decker's Complaint (Doc. 1). At the time the Complaint was filed, Plaintiff was an inmate in the custody of the Federal Bureau of Prisons housed at the United States Penitentiary located in Marion, Illinois (USP-Marion). In recent months, Plaintiff has repeatedly filed motions for an extension indicating that he believed he would be released to a halfway house. Although Plaintiff has not formally updated his address with the Court, the Court notes that per the Bureau of Prisons inmate locator tool, Plaintiff is now listed at the Residential Reentry Management Program in Detroit, Michigan.[1] Plaintiff's most recent deadline to respond to the Motion to Dismiss was March 7, 2025. That deadline has now lapsed without a response. For reasons stated in this Order, the Court finds it appropriate to grant the Defendant's Motion to Dismiss.

The Defendant argues that dismissal is appropriate for multiple reasons. First, they contend that Plaintiff's claims are precluded by *res judicata* and the doctrine on claim splitting. Defendant points to three prior federal lawsuits that Plaintiff has pursued within the last five years—*Decker*

---

[1] Inmate Locator Tool, https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results, last accessed March 25, 2025.

*v. Lammers, et al.*, 20-cv-135 (S.D. Ind. Feb. 11, 2022) (First Amendment retaliation claim seeking injunctive relief concerning restrictions on Plaintiff's communications with his son, claims dismissed with prejudice per stipulation of dismissal); *Decker v. Lammers, et al.*, 21-cv-440 (S.D. Ind. May 25, 2023) (First Amendment retaliation claim seeking injunctive relief concerning communications with Plaintiff's wife, dismissed as moot based on Plaintiff's transfer from facility in Southern District of Indiana to facility in Southern District of Illinois); *Decker v. United States, et al.*, 23-cv-85 (S.D. Ind. Aug. 30, 2024) (intentional infliction of emotional distress claim re communications with wife, claim dismissed as unsupported under Indiana law).  They argue that there is privity between this lawsuit and the prior three lawsuits, and that the substance of the claims all relate back to contentions he has made over the years about his ability to communicate with his family.  Even if the legal theories from case to case are not identical, they contend that because the factual premise is essentially the same, then claim splitting precludes a later action such as the present case.  Alternatively, they contend that Plaintiff has failed to make out a valid civil conspiracy claim, a civil conspiracy claim should be treated as barred by the intentional torts exception, and the conspiracy claim is not backed by any freestanding tort claim so it must fail.

### Background

The Complaint sets forth the following allegations (Doc. 1): Plaintiff alleges that Octavia Wyatt (who he describes as a counterterrorism analyst for the BOP) violated his rights multiple times beginning in February of 2021 when she interfered with his ability to correspond with his wife.  Because the Complaint presents claims under the FTCA, the Court dismissed the individual defendants including Wyatt, and left the United States as the sole remaining Defendant.  (Doc. 9 at 4-5).  Despite the dismissal of the individual defendants, it is still relevant to discuss their alleged conduct for context.

First, Plaintiff alleges that in February of 2021, Wyatt abused her position and the disciplinary process when she wrote Plaintiff an infraction for abusing the mail by allegedly sending his wife instructions about how to conduct business on the "dark web" to obtain drugs. (Doc. 1 at 2). Plaintiff alleges this was an abuse of process and retaliation by Wyatt for other administrative remedies that Plaintiff had filed against her.

Second, on November 16, 2021, Plaintiff alleges that he attempted to add his wife's email address to his approved communication list, an effort he had tried multiple times in the past, and a form of contact many other CMU inmates are afforded. He claims Wyatt abused process, conspired with other employees, and attempted to extend his placement in the CMU with an incident report about this issue.

Third, he alleges that on February 13, 2023, Wyatt wrote Plaintiff an incident report for abuse of process of the mail because he attempted to send a letter to his daughter, in which he asked her to relay well-wishes to his younger son. He alleges this incident report was also an abuse of process and part of a conspiracy to keep him in the CMU.

Fourth, Plaintiff alleges that in August of 2023, he wrote a letter to his wife's family court attorney wherein he asked the attorney to relay a message to his wife and her sister. He claims the mail should not have been reviewed because it was marked as "legal," but nevertheless Wyatt had it scanned into his file, and he was charged with abuse of mail.

Fifth, he alleges that in February of 2021, Wyatt improperly removed his wife from his contact list, which caused adverse effects for his wife and his relationship. He additionally claims that on October 7, 2022, his son's foster mother was also removed from his approved communication list. He claims both removals were done by Wyatt without following proper policies or procedures of the BOP, and that Wyatt lacked the authority to alter his contacts.

Sixth, and finally, Plaintiff alleges that because he was unable to contact his wife, the two could not coordinate a strategy to defend their rights in family court, which led to the loss of custody of their son. He claims this violated his rights and his wife's rights, and thus he also alleges a loss of consortium. He claims the communication interference has caused extreme emotional distress.

Plaintiff seeks $200,000 for the intentional infliction of emotional distress for he and his wife. (Doc. 1 at 5).

Based on the allegations, the Court allowed the following claims to proceed:

**Count 2:**   FTCA claim against the United States for Wyatt's conspiracy to keep Plaintiff in the CMU;

**Count 4:**   FTCA claim against the United States for intentional infliction of emotional distress related to Wyatt's behaviors.

Two other claims were dismissed concerning Wyatt's alleged abuse of process and the alleged retaliatory nature of her behavior. (Doc. 9).

In *Decker v. Lammers, et al.*, 20-cv-135, Plaintiff alleged retaliatory interference with his ability to communicate via telephone with his son. The Court allowed him to proceed solely against the prison's warden for injunctive relief. *Decker v. Lammers*, 20-cv-135 (S.D. Ind. Aug. 13, 2020, docket entry 23). The parties jointly stipulated to the dismissal of this claim with prejudice on February 11, 2022. Within the underlying complaint, Plaintiff discussed state family court proceedings and an associated concern about his ability to maintain contact with his son.

In *Decker v. Lammers, et al.*, 21-cv-440, Plaintiff raised concerns about his ability to communicate with his wife via letter and other means. In the complaint he discussed receiving an incident report from Wyatt in February of 2021 related to an attempt to communicate with his wife. He named Octavia Wyatt and two other defendants but was ultimately allowed to proceed

against the Warden on a First Amendment retaliation claim for injunctive relief concerning his ability to communicate with his wife. *Decker v. Lammers, et al.*, 21-cv-440 (S.D. Ind. Apr. 25, 2022, docket entry 11). On May 25, 2023, the Court granted a motion to dismiss premised on Plaintiff's relocation from a prison within the Southern District of Indiana to a prison in the Southern District of Illinois. The Seventh Circuit affirmed that dismissal on January 6, 2025, noting that Plaintiff had not taken an earlier opportunity in that case to amend his claims to include any broader conduct than the injunctive relief sought. *Decker v. Lammers*, Case No. 23-2179 (7th Cir. Jan. 6, 2025).

In *Decker v. U.S., et al.*, Plaintiff's complaint concerned state court child custody proceedings for his son, his ability to communicate his wife about the proceedings, and other theories, including the intentional infliction of emotional distress related to these issues. Plaintiff was initially allowed to proceed under the FTCA against the United States, for theories including the intentional infliction of emotional distress. However, on August 30, 2024, the Court granted a motion to dismiss finding that the intentional infliction of emotional distress claim was not adequately pled under Indiana law. *Decker v. U.S., et al.*, 23-cv-85 (S.D. Ind. Aug. 30, 2024, docket entry 90). Claims remaining in this case after the August 30, 2024, dismissal are to be set for a Pavey hearing in the near future. The public docket sheet in that case also confirms that Plaintiff recently updated his address with that Court on March 17, 2025. *Decker v. U.S., et al.*, 23-cv-85 (S.D. Ind. Mar. 18, 2025, docket entry 114).

## Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face. *Peterson v. Wexford Health Sources, Inc.*, 986

F.3d 746, 751 (7th Cir. 2021) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *and Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Peterson*, 986 F.3d at 751.  The court is not, however, required to accept as true a legal conclusion couched as a factual allegation.  *Id.*

## Discussion

As a preliminary matter, the Court notes that Defendant's Motion was filed on August 20, 2024, and the Court gave Plaintiff numerous extensions to file a response.  His most recent deadline to respond was March 7, 2025.  That deadline came and went without any communication from the Plaintiff.  The Court waited an additional 2.5 weeks beyond the deadline to see if Plaintiff would update his address, file a response, or otherwise engage with this case.  He has not done so, but as the Court noted above, he did communicate with the Southern District of Indiana about his pending case in that District.  Against this backdrop, the Court does not find it necessary to wait any longer for a response in this case.  This case is appropriately subject to dismissal for multiple reasons.

As the Seventh Circuit explained in *Scholz v. United States*, "a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." 18 F.4th 941, 951 (7th Cir. 2021) (internal citations omitted).  Under the doctrine of claim splitting, a plaintiff may not bring a new suit arising from the same transaction or events underlying a previous suit, simply by a change of legal theory.  *Id.*  Claim preclusion "blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trs. of W. Ill. Univ.*, 796 F.3d 837, 840 (7th Cir.

2015). Unlike claim preclusion or *res judicata,* the doctrine on claim splitting does not require finality of judgment or a resolution of the claims on the merits to take effect. *Scholz*, 18 F.4th at 952. The identity of the parties is treated as established if the lawsuits involve identical parties. Identity is also treated as established if a defendant in one case is an official of the United States government, and the government is a primary party in another case. *See e.g., Scholz*, 18 F.4th at 952, *citing Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.").

Here, as the Defendant argues, there is privity across all four lawsuits because the Defendants have either been the United States or employees of the United States, such as the warden of a federal prison. The factual allegations in the present complaint also largely overlap with allegations in the prior lawsuits. The bulk of Plaintiff's allegations in this lawsuit concern actions that Octavia Wyatt (a government employee) took in relation to his ability to communicate with his son or wife in 2021 and 2022. He also mentions interference with his communications with his son as recently as February 13, 2023. All of these assertions could have easily fallen within the scope of Plaintiff's three prior federal lawsuits in the Southern District of Indiana—Case Nos. 20-cv-135, 21-cv-440, or 23-cv-85. Plaintiff explicitly presented allegations about his ability to communicate with his wife and son in case 23-cv-85 and he associated these allegations with a claim of intentional infliction of emotional distress. Additionally, in Case No. 21-cv-440 he directly attacked Wyatt's actions in February of 2021 pertaining to communication with his wife, and these are the exact same factual events that give rise to his first primary factual contention in this case. Plaintiff's attempt to recast his claims in this lawsuit pertaining to February of 2021

(his first and fifth allegations in his complaint), November of 2021, or February of 2023 all fit within the bounds of the factual allegations he explicitly raised in his prior lawsuits. Additionally, to the extent he complains in a broader sense in this complaint about problems with state family court proceedings or his ability to access the courts for those proceedings, he has already presented allegations of this nature in his previous proceedings. His filing of the present lawsuit is an attempt to take additional bites at the apple for factual scenarios he has already presented in federal litigation, and it will not be tolerated. The Court finds it appropriate to dismiss the duplicative claims under the principles of *res judicata* and the doctrine on claim-splitting.

The sole exception is Plaintiff's assertion in this Complaint that in August of 2023 he attempted to transmit legal mail labeled as such to an attorney, but Wyatt scanned and read the correspondence. Plaintiff claims that this was an abuse of process (a theory the undersigned already rejected), and that it was a step in furtherance of a conspiracy that Wyatt had with other officials to keep Plaintiff confined to the communications management unit (CMU). This factual assertion is a new factual development relative to claim splitting arguments and it falls outside the scope of the prior lawsuits. The Court allowed Plaintiff to proceed in Claim 2 of this lawsuit under the FTCA against the United States on the theory that Wyatt had a conspiracy to keep him in the CMU—and the assertion about August of 2023 falls within the scope of that claim. (Doc. 9).

The Defendant argues that this claim cannot proceed as pled for multiple reasons. As the Court previously explained, the FTCA permits a suit for money damages against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Under the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746

F.3d 753, 758 (7th Cir. 2014). The FTCA's jurisdictional grant only covers "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Augustis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (citing *Morisch v. United States*, 653 F.3d 522, 530 (7th Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances.")). The United States' waiver of sovereign immunity is not absolute. Section 2680 sets forth claims for which it reserves immunity. Subsection (h) reserves immunity for claims "arising out of" certain intentional torts: "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." 28 U.S.C. § 2680(h).

The Defendant now argues that although Plaintiff framed one of his claims against Wyatt and her colleagues as one for a civil conspiracy, the claim should not be allowed to proceed because it is premised on intentional torts and thus is barred by § 2680(h). Defendant persuasively points to *Omegbu v. United States*, 475 Fed. App'x 628, 629 (7th Cir. 2012) wherein an individual attempted to pursue an FTCA claim about the fraudulent placement of a criminal record in his immigration file that resulted in the denial of his application for naturalization, but the claim was rejected because an alleged deliberate falsification of a record by government officials was exactly the sort of intentional conduct barred by § 2680(h). Additionally, Defendant cited to *Deloria v. Veterans Administration*, 927 F.2d 1009 (7th Cir. 1991), wherein the Seventh Circuit rejected an FTCA claim premised on the alleged deliberate misrepresentation and distortion of a disability benefits applicant's records that had been couched as a conspiracy claim because the underlying conduct was still premised on intentional misconduct.

In this case, Defendant now contends that as Plaintiff has presented it, he faults Wyatt and her colleagues for making false claims or disciplinary assertions against him related to his communications that worked as part of a conspiracy to keep him detained in the CMU. Section 2680(h) expressly excludes liability under the FTCA for "claims arising out of…misrepresentation, [and] deceit." Here, a closer examination of Plaintiff's assertions against Wyatt (and thus the United States under the FTCA) reveals that he seeks to hold the United States liable for intentional wrongdoing and a conspiracy in furtherance of that wrongdoing. Intentional misconduct of prison employees, such as abusing the process or making false disciplinary claims against Plaintiff pertaining to his outgoing mail in August of 2023, is conduct that would be excluded under the FTCA. *See e.g. Swanson v. USA*, 2024 WL 3595451 at *3-4 (S.D. Ill. July 31, 2024) (finding that an inmate's claims about prison employees' intentional misconduct in relation to his medical records were precluded by the intentional torts exception). Thus, even though Plaintiff framed his claim as one for a civil conspiracy, the factual objective of his claim sought to hold the United States liable for intentional torts, and the claim must be rejected on the merits.

Even if the Court did not conclude that the intentional torts exception barred Plaintiff's conspiracy claim, the Defendant has provided multiple alternative grounds to reach the same result. As to any aspect of the conspiracy claim that touched on events involved in the three prior federal lawsuits discussed above, any such claim would be barred by the doctrine against claim splitting. Additionally, the Defendant argues that because no underlying tortious conduct remains, there can be no freestanding conspiracy claim. They argue that Plaintiff claims the wrong here is a concerted effort to keep him in the CMU, but that there is no specific tort under Illinois law for keeping an inmate in the CMU. These alternative arguments stand unrefuted and are supported by citations to relevant precedent.

Based on the foregoing analysis, the Court finds it appropriate to grant the Motion to Dismiss (Doc. 23) in full. The dismissal of all claims pertaining to the factual allegations from 2021 through February of 2023 is based upon *res judicata* and the associated doctrine against claim splitting. The dismissal of the conspiracy claim associated with the alleged conduct in August of 2023 is a merits-based dismissal premised on the application of the intentional torts exception.[2]

### Disposition

Defendant's Motion to Dismiss (Doc. 23) is **GRANTED**. Counts 2 and 4 are barred by *res judicata* and the doctrine on claim splitting to the extent they rely on factual allegations from 2021 through February of 2023. Additionally, Count 2 is dismissed with prejudice for failure to state a claim upon which relief may be granted under 12(b)(6) because the civil conspiracy claim pertaining to August of 2023 is barred by the intentional torts exception of § 2680(h).

The Clerk of Court is **DIRECTED** to enter judgment accordingly, and to **CLOSE** this case.

**IT IS SO ORDERED**.

**DATED: 3/26/2025**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**

---

[2] The Defendant asked for dismissal for lack of subject-matter jurisdiction, but the Seventh Circuit stated in *Omegbu*, 475 Fed. App'x 628, 629 (7th Cir. 2012) that a dismissal based on the intentional torts exception should be a merits-based dismissal rather than a dismissal for lack of subject-matter jurisdiction.